UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ARNOLDO RODRIGUEZ DIAZ, | Case No. 3:25-cv-05071 |
| Petitioner-Plaintiff, | |
| v. | **ORDER GRANTING *EX PARTE* TEMPORARY RESTRAINING ORDER; AND ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |
| POLLY KAISER, Acting Field Office Director of San Francisco Office of Detention and Removal, U.S. Immigrations and Customs Enforcement, U.S. Department of Homeland Security, et al., | |
| Respondents-Defendants. | [Re:  Dkt. No. 2] |

Before the Court is Petitioner-Plaintiff Arnoldo Rodriguez Diaz's *Ex Parte* Motion for Temporary Restraining Order.  Dkt. No. 2 ("Mot.").  Petitioner-Plaintiff simultaneously filed his Petition for Writ of Habeas Corpus and *Ex Parte* Motion for Temporary Restraining Order against Respondents-Defendants Acting Field Office Director Polly Kaiser, Acting Director of Immigration and Customs Enforcement Todd M. Lyons, Secretary of the Department of Homeland Security Kristi Noem, and United States Attorney General Pam Bondi on June 14, 2025, seeking an order temporarily enjoining the Department of Homeland Security ("DHS"), their agents, employees, and successors in office from re-detaining him until such time as he has had an opportunity to challenge his re-detention before a neutral decisionmaker.  *Id.* at 1. Petitioner-Plaintiff states that he was released from immigration custody five years ago, but fears that there is a substantial and immediate risk that he will be re-detained at an in-person

1    Immigration and Customs Enforcement ("ICE") check-in appointment this weekend.  *Id.*

2         For the following reasons, the Court GRANTS Petitioner-Plaintiff's *Ex Parte* Motion for

3    Temporary Restraining Order.

4    **I.     BACKGROUND**

5         Petitioner-Plaintiff was born in El Salvador and has lived in the United States since he was

6    nine years old.  Dkt. No. 1 ("Petition") ¶ 24.  DHS initiated removal proceedings against him

7    when he was fifteen years old.  *Id.* ¶ 30.  Petitioner-Plaintiff was arrested in 2018 and pled guilty

8    to domestic violence charges.  *Id.* ¶ 33.  He was taken into custody by ICE upon completion of his

9    sentence.  *Id.*  Petitioner-Plaintiff was incarcerated by DHS for seventeen months between 2019

10   and 2020 pending resolution of his immigration case.  *Id.* ¶ 2.  DHS released him on a $10,000

11   bond in May 2020 pursuant to an order of District Judge Yvonne Gonzalez Rogers.  *Id.*  DHS

12   installed an electronic ankle monitor and enrolled Petitioner-Plaintiff in the Intensive Supervision

13   Appearance Program ("ISAP").  *Id.*  DHS removed the ankle monitor in April 2022.  *Id.*

14        Petitioner-Plaintiff has been out of custody for five years, during which time he has been

15   the sole caretaker for his minor U.S. citizen son, and he recently became the father of a newborn

16   U.S. citizen daughter.  Petition ¶¶ 2-3.  Petitioner-Plaintiff has complied with all conditions of

17   release.  *Id.* ¶ 2.  His most recent check-in appointment with ICE was on May 31, 2024 and he has

18   another appointment on June 30, 2025.  *Id.* ¶ 4.  *Id.*  Petitioner-Plaintiff has several pending

19   applications for relief for removal, including a pending asylum application that is scheduled for a

20   Master Calendar Hearing before the San Francisco Immigration Court on August 19, 2026.  *Id.* ¶

21   24.

22        On Friday, June 13, 2025, Petitioner-Plaintiff received a message on his telephone from

23   ISAP directing him to report to the San Francisco ISAP Office in person on either Saturday, June

24   14, 2025 or Sunday, June 15, 2025.  Petition ¶ 5.  No reason was given.  *Id.*  Petitioner-Plaintiff's

25   counsel attempted to call ISAP three times, and each time counsel was placed on hold before the

26   call was disconnected.  *Id.*  Petitioner-Plaintiff's counsel also tried calling and emailing the San

27   Francisco ICE Office to seek clarification, but received no response.  *Id.*  Petitioner-Plaintiff is

28   aware that other non-citizens have received similar messages to report from ISAP, and that many

1   of those individuals were incarcerated or re-incarcerated when they complied. *Id*. ¶¶ 6-9.

2       Petitioner-Plaintiff filed the present Petition for a Writ of Habeas Corpus and *Ex Parte*

3   Motion for a Temporary Restraining Order on June 14, 2025, seeking to enjoin Respondents-

4   Defendants from re-detaining him at his in-person check-in with immigration authorities.

5   **II.    LEGAL STANDARD**

6       The standard for issuing a temporary restraining order is identical to the standard for

7   issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir.

8   2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially

9   identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable

10  discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that

11  the plaintiff is entitled to such relief." *Winter v. Natural Resources Defense Council, Inc.*, 555

12  U.S. 7, 22 (2008). And "a TRO 'should be restricted to . . . preserving the status quo and

13  preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing

14  and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018)

15  (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No.*

16  *70*, 415 U.S. 423, 439 (1974)).

17      A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to

18  succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary

19  relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public

20  interest." *Winter*, 555 U.S. at 20. "[I]f a plaintiff can only show that there are serious questions

21  going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary

22  injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the

23  other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942

24  (9th Cir. 2014) (internal quotation marks and citations omitted). "[W]hen the Government is the

25  opposing party," the final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

26  **III.    DISCUSSION**

27      As a preliminary matter, the Court finds that the requirements for issuing a temporary

28  restraining order without notice set out in Federal Rule of Civil Procedure 65(b)(1) are met in this

United States District Court
Northern District of California

3

1    case.  Petitioner-Plaintiff's attorney has set out specific facts showing that "immediate and

2    irreparable injury, loss, or damage" may result before the adverse party can be heard in opposition

3    and has stated that counsel attempted to contact the Civil Division Chief at the U.S. Attorney's

4    Office for the Northern District of California on Friday, June 13, 2025 regarding the forthcoming

5    Habeas Petition and Motion for Temporary Restraining Order.  *See* Dkt. No. 2-2, Sinodis Decl. Re

6    Notice ¶¶ 3-5.

7         The Court finds that Petitioner-Plaintiff has shown at least that there are "serious questions

8    going to the merits" and that "the balance of hardships tips sharply" in his favor.  *Weber*, 767 F.3d

9    at 942.  Under the Due Process Clause of the Fifth Amendment to the United States Constitution,

10   no person shall be "deprived of life, liberty, or property, without due process of law."  U.S. Const.

11   amend. V.  "Freedom from imprisonment—from government custody, detention, or other forms of

12   physical restraint—lies at the heart of the liberty that Clause protects."  *Zadvydas v. Davis*, 533

13   U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)).  Courts have

14   previously found that individuals released from immigration custody on bond have a protectable

15   liberty interest in remaining out of custody on bond.  *See Ortiz Vargas v. Jennings*, No. 20-cv-

16   5785, 2020 WL 5074312, at *3 (N.D. Cal. Aug. 23, 2020); *Ortega v. Bonnar*, 415 F. Supp. 3d

17   963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a

18   liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond.");

19   *Romero v. Kaiser*, No. 22-cv-02508, 2022 WL 1443250, at *2 (N.D. Cal. May 6, 2022) ("[T]his

20   Court joins other courts of this district facing facts similar to the present case and finds Petitioner

21   raised serious questions going to the merits of his claim that due process requires a hearing before

22   an IJ prior to re-detention."); *Jorge M. F. v. Wilkinson*, No. 21-cv-01434, 2021 WL 783561, at *2

23   (N.D. Cal. Mar. 1, 2021).

24        For similar reasons as those discussed in the aforementioned cases, this Court finds that the

25   three factors relevant to the due process inquiry set out in *Mathews v. Eldridge*, 424 U.S. 319

26   (1976)—"the private interest that will be affected by the official action," "the risk of an erroneous

27   deprivation . . . and the probable value, if any, of additional or substitute procedural safeguards,"

28   and "the Government's interest, including the function involved and the fiscal and administrative

United States District Court
Northern District of California

1    burdens that the additional or substitute procedural requirement would entail," *id.* at 335—support

2    requiring a pre-detention hearing for Petitioner-Plaintiff.  Petitioner-Plaintiff has a substantial

3    private interest in remaining out of custody on bond, which "enables him to do a wide range of

4    things open to persons" who are free from custody, such as working, living at home, and "be[ing]

5    with family and friends . . . to form the enduring attachments of normal life."  *See* Mot. at 10;

6    *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  There is also a risk of erroneous deprivation that

7    the additional procedural safeguard of a pre-detention hearing would help protect against.  And,

8    like other Courts in this district, the Court concludes that the government's interest in re-detaining

9    Petitioner-Plaintiff without a hearing is "low," particularly in light of the fact that Petitioner-

10   Plaintiff has long complied with his reporting requirements.  *See Jorge M.F.*, 2021 WL 783561, at

11   *3; *Ortega*, 415 F. Supp. 3d at 970.

12       Petitioner-Plaintiff is also likely to suffer immediate and irreparable harm in the absence of

13   preliminary relief.  The Ninth Circuit has recognized "irreparable harms imposed on anyone

14   subject to immigration detention" including "the economic burdens imposed on detainees and

15   their families as a result of detention, and the collateral harms to children of detainees whose

16   parents are detained."  *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).  Both risks are

17   present here, where Petitioner-Plaintiff has two minor children, one a newborn, who depend upon

18   him for support.  Dkt. No. 2-1, Sinodis Decl. ¶ 9.  In addition, "[i]t is well established that the

19   deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v.*

20   *Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).

21       Finally, the balance of the equities and the public interest, which merge in light of the fact

22   that the government is the opposing party, tip sharply in Petitioner-Plaintiff's favor.  "[T]he public

23   has a strong interest in upholding procedural protections against unlawful detention, and the Ninth

24   Circuit has recognized that the costs to the public of immigration detention are staggering."  *Jorge*

25   *M. F.*, 2021 WL 783561, at *3 (cleaned up) (quoting *Ortiz Vargas*, 2020 WL 5074312, at *4, and

26   then quoting *Hernandez*, 872 F.3d at 996); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th

27   Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has

28   been violated, because all citizens have a stake in upholding the Constitution.").  Without the

1   requested injunctive relief, Petitioner-Plaintiff might be abruptly taken into ICE custody,

2   subjecting both him and his family to significant hardship. *See* Mot. at 13. Yet the comparative

3   harm potentially imposed on Respondents-Defendants is minimal—a mere short delay in detaining

4   Petitioner-Plaintiff, should the government ultimately show that detention is intended and

5   warranted. Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable

6   sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753

7   F.2d 719, 727 (9th Cir. 1983).

8          Accordingly, the Court hereby GRANTS Petitioner-Plaintiff's Motion for a Temporary

9   Restraining Order. Under Federal Rule of Civil Procedure 65, a court "may issue a preliminary

10  injunction or a temporary restraining order only if the movant gives security in an amount that the

11  court considers proper to pay the costs and damages sustained by any party found to have been

12  wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The rule "invests the district court

13  'with discretion as to the amount of security required, if any,'" and the court "may dispense with

14  the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from

15  enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting

16  *Barahona–Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)). In this case, in light of the

17  minimal risk of harm to the government, the Court determines that security is not required.

18  **IV.   ORDER**

19         For the foregoing reasons, IT IS HEREBY ORDERED that Petitioner-Plaintiff's *Ex Parte*

20  Motion for Temporary Restraining Order is GRANTED to preserve the status quo pending further

21  briefing and a hearing on this matter. Respondents-Defendants are ENJOINED AND

22  RESTRAINED from re-detaining Petitioner-Plaintiff without notice and a hearing. This Order

23  shall remain in effect until Monday, June 23, 2025 at 5:00 p.m. The Petition for Writ of Habeas

24  Corpus, Motion for Temporary Restraining Order, and this Order SHALL be served on

25  Respondents-Defendants such that they receive actual notice by no later than Monday, June 16,

26  2025 at 2:00 p.m.

27         Respondents-Defendants are ORDERED TO SHOW CAUSE in-person at a hearing in the

28  courtroom of the assigned Judge, or as otherwise ordered by that Judge, on **Monday, June 23,**

United States District Court
Northern District of California

1     **2025 at 1:00 p.m.** why a preliminary injunction should not issue.  Respondents-Defendants shall

2     file a response to Petitioner-Plaintiff's motion by no later than Wednesday, June 18, 2025 at 5:00

3     p.m.  No reply shall be filed.

4

5         **IT IS SO ORDERED.**

6

7     Dated:  June 14, 2025 at 3:40 p.m.

8                                   _____

9                                     BETH LABSON FREEMAN, as Duty Judge
United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California