United States District Court<br>Northern District of California

1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7     AROLDO RODRIGUEZ DIAZ,

                  Case No. 25-cv-05071-TLT

8            Plaintiff,

9       v.

                  **ORDER GRANTING MOTION FOR**
**PRELIMINARY INJUNCTION**

10     POLLY KAISER, et al.,

                  Re: Dkt. No. 2

11            Defendants.

12
13       Petitioner-Plaintiff Aroldo Rodriguez Diaz ("Petitioner-Plaintiff") is a noncitizen who has

14 been living freely for five years, working full-time, and taking care of two young U.S. citizen

15 children while he litigates his removal proceedings. Since Petitioner-Plaintiff was released on

16 bond from Department of Homeland Security's ("DHS") custody in 2020, the government has de-

17 escalated his supervision and not moved to re-detain him until now. Without warning,

18 Respondents-Defendants DHS, U.S. Immigration and Customs Enforcement ("ICE"), and Pam

19 Bondi, in her official capacity as the U.S. Attorney General (collectively, "Respondents") now

20 assert they have the authority to re-detain Petitioner-Plaintiff and have instructed him to appear at

21 a local ICE office. Petitioner-Plaintiff joins a growing number of noncitizens on conditional

22 release who assert that the Constitution entitles them to due process before they are re-detained.

23       Before the Court is Petitioner-Plaintiff's motion for a preliminary injunction. ECF 2. This

24 Court granted an *ex parte* temporary restraining order ("TRO"), enjoining Respondents "from re-

25 detaining Petitioner-Plaintiff without notice and a hearing." ECF 4 at 6. The parties stipulated to

26 leave the TRO in effect while the preliminary injunction motion is pending. ECF 12, 18.

27 Respondents filed an opposition on June 30, 2025. ECF 15. Petitioner-Plaintiff filed a reply on

28 July 18, 2025. ECF 26. The Court heard oral argument on September 9, 2025.

Having considered the parties' briefs, the relevant legal authority, oral argument, and for the reasons below, the Court **GRANTS** the motion for a preliminary injunction for the pendency of these proceedings. Respondents are **ENJOINED** from re-detaining Petitioner-Plaintiff Aroldo Rodriguez Diaz without notice and a pre-deprivation hearing before a neutral decisionmaker where Respondents demonstrate that Petitioner-Plaintiff's re-detention is legally justified.

## I.     BACKGROUND

### A.  Immigration Proceedings and Appeals

Petitioner-Plaintiff is a citizen of El Salvador who entered the United States in 2006 at the age of nine. ECF 1 ¶ 29. In 2011, when he was fifteen years old, Petitioner-Plaintiff was convicted of first-degree residential burglary. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1194 (9th Cir. 2022). Following a month in state custody, Petitioner-Plaintiff was transferred to the U.S. Department of Homeland Security's Office of Refugee Resettlement ("ORR") custody as an Unaccompanied Alien Child, and ICE initiated removal proceedings on or about November 2, 2011. ECF 1 ¶ 29; Li Decl., ¶5. Petitioner-Plaintiff was charged with being inadmissible as a noncitizen present in the United States who has not been inspected, admitted, or paroled, under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i). ECF 15-1, Declaration of Jarvin Li (Li Decl.), ¶ 5. Petitioner-Plaintiff's removal proceedings were initiated pursuant to "Section 240" of the INA. *Id.*

On January 19, 2012, Petitioner-Plaintiff was released into his father's custody. Li Decl., ¶ 6; ECF 1 ¶ 31. Petitioner-Plaintiff alleges that DHS failed to serve a copy of the Notice to Appear (NTA) on the adult to whom he was released. *Id.* ¶ 30. Petitioner-Plaintiff also alleges that during a number of proceedings in immigration court, he suffered from ineffective assistance of counsel. *Id.* ¶ 31.

During the period from 2012 to 2018, Petitioner-Plaintiff was sentenced to eighteen months of probation for unlawful possession of cocaine, to which he pleaded no contest in return for dismissal of a charge for the possession of burglary tools. *Rodriguez Diaz*, 53 F.4th at 1194; Li Decl., ¶¶ 39–44. Respondents allege that on August 1, 2017, ICE received a Gang Member Validation Report from the San Mateo County Gang Task Force noting that Petitioner-Plaintiff

1    had admitted to being a gang member.  Li Decl., ¶ 42.

2        On March 13, 2018, Petitioner-Plaintiff filed a Form I-589, Application for Asylum and

3    for Withholding of Removal, with U.S. Citizenship and Immigration Services ("USCIS").

4    *Id.* ¶ 32.

5        On March 3, 2018, Petitioner-Plaintiff was arrested on seven felony counts after a

6    domestic violence dispute with the mother of his U.S. citizen son.  ECF 1 ¶ 33; *Rodriguez Diaz*,

7    53 F.4th at 1194.  After incarceration in the San Mateo County Jail, Petitioner-Plaintiff was

8    released from criminal custody and taken back into ICE custody on or about December 18, 2018,

9    pursuant to 8 U.S.C. § 1226(a), which authorizes discretionary detention of noncitizens in pending

10   removal proceedings.  *Rodriguez Diaz*, 53 F.4th at 1194; Li Decl., ¶ 10; ECF 15 at 10.

11       On February 27, 2019, Petitioner-Plaintiff appeared before an immigration judge ("IJ") for

12   a bond hearing pursuant to 8 C.F.R. § 1236.1.  *Id.* ¶ 12; ECF 1 ¶ 34.  The IJ denied bond "on the

13   ground that [he] was a danger to the community based on his gang membership."  *Rodriguez Diaz*,

14   53 F.4th at 1194.

15       On May 13, 2019, at a merits hearing on Petitioner-Plaintiff's application for relief from

16   removal; an IJ denied Petitioner-Plaintiff's application for relief under the Convention Against

17   Torture ("CAT").  ECF 1 ¶¶ 35–36; Li Decl., ¶ 13.  Petitioner-Plaintiff alleges that the attorney

18   who represented him at the May 13, 2019 immigration court hearing failed to provide him with

19   effective assistance of counsel.  ECF 1 ¶ 35.  Petitioner-Plaintiff was ordered removed by the IJ

20   and, on October 17, 2019, the Board of Immigration Appeals ("BIA") dismissed his appeal of the

21   denial of CAT relief.  Li Decl., ¶¶ 13–15.  On October 17, 2019, Petitioner-Plaintiff filed a

22   Petition for Review ("PFR") of the BIA decision with the Ninth Circuit.  *Id.* ¶ 15; ECF 1 ¶ 36.

23   The Ninth Circuit granted a temporary stay of removal.  *See Rodriguez Diaz*, 53 F.4th at 1194.

24       On February 5, 2020, while still in custody, Petitioner-Plaintiff filed a motion for a second

25   bond hearing and custody redetermination, arguing that a material change in circumstances

26   warranted a new hearing pursuant to 8 C.F.R. § 1003.19(e).  ECF 1 ¶ 38; Li Decl., ¶ 17.  The IJ

27   denied the motion, citing Petitioner-Plaintiff's inconsistent testimony about gang membership and

28   finding no grounds for a new hearing.  ECF 1 ¶ 38; Li Decl., ¶ 17, Ex. C.  The IJ decision also

United States District Court
Northern District of California

3

recognized Petitioner-Plaintiff's efforts at rehabilitation and the vacatur of his cocaine possession conviction. Li Decl., ¶ 17, Ex. C. On March 16, 2020, Petitioner-Plaintiff filed a petition for writ of habeas corpus in federal court, seeking release from custody or an order enjoining the government from continuing to detain him without providing a bond hearing on the basis of materially changed circumstances. ECF 1 ¶¶ 39–40.

On April 27, 2020, Judge Yvonne Gonzalez Rogers in the Northern District of California granted Petitioner-Plaintiff's habeas petition and ordered the government to provide him with a bond hearing before an IJ, where the government had to establish flight risk or danger by a clear and convincing evidence standard. *Rodriguez Diaz v. Barr*, 20-cv-01806, 2020 WL 1983401, *9 (N.D. Cal. Apr. 27, 2020). After a hearing before an IJ pursuant to 8 C.F.R. § 236(1)(c), on May 13, 2020, Petitioner-Plaintiff was released on $10,000 bond. ECF 1 ¶ 41; ECF 2-1, Declaration of Johnny Sinodis ("Sinodis Decl."), Ex. A. The IJ decision does not include factual findings. Sinodis Decl., Ex. A. Petitioner-Plaintiff was placed on electronic ankle monitor supervision and enrolled in the Intensive Supervision Appearance Program ("ISAP"). ECF ¶ 41.

On June 25, 2020, the government appealed Judge Yvonne Gonzales Roger's order granting Petitioner-Plaintiff's habeas petition. *Rodriguez Diaz*, 53 F.4th at 1193. On November 21, 2022, the Ninth Circuit reversed, holding that procedural due process did not entitle Petitioner-Plaintiff, who was under prolonged nonmandatory detention while his removal proceedings were pending, to a second bond hearing at which the government bore the burden of proof by clear and convincing evidence to justify continued detention. *Id.* at 1193, 1211. The Ninth Circuit held that "the duration of his detention, by itself, did not create a due process violation." *Id.* at 1212. The government did not appeal the IJ's determination, made on that standard, that detention was not justified. *Id.* at 1195. After the Ninth Circuit issued its decision, the government did not move to re-detain Petitioner-Plaintiff. ECF 1 ¶ 41.

On January 13, 2020, at the same time he pursued a custody redetermination, Petitioner-Plaintiff also filed a motion to reopen his removal proceedings at the BIA, alleging ineffective assistance of counsel, new eligibility for relief from removal, changed conditions in El Salvador. *Id.* ¶¶ 37, 40; Li Decl., ¶ 16. On June 16, 2020, the BIA denied his motion to reopen. Li Decl., ¶

4

22.  Petitioner-Plaintiff alleges that he suffered from ineffective assistance of counsel when his attorney missed the deadline to file a PFR.  ECF 1 ¶ 43.  On March 3, 2021, Petitioner-Plaintiff was able to file a second PFR with the Ninth Circuit, which was consolidated with his first.  *Id.*; Li Decl., ¶ 26.  On July 1, 22024, the Ninth Circuit granted the consolidated PFRs and remanded Petitioner-Plaintiff's case to the BIA for a new decision.  ECF 1 ¶ 45; *Rodriguez Diaz v. Garland*, No. 19-72634 & No. 21-70497, 2024 WL 3250371 (9th Cir. July 1, 2024).

Petitioner-Plaintiff's pending asylum claim, originally filed on March 13, 2018, was referred to immigration court and is set for a hearing on August 19, 2026.  ECF 1 ¶ 10; Sinodis Decl., Ex. C.

### B.  Release on Bond

Petitioner-Plaintiff has been free from ICE custody since his hearing and release on bond pursuant to 8 C.F.R. 236.1(c) on May 15, 2020.  ECF 1 ¶ 21.  During his five years on conditional release, Petitioner-Plaintiff has been the sole caretaker for his eight-year-old U.S. citizen son and now also has an infant U.S. citizen daughter.  *Id.* ¶ 3.  Petitioner-Plaintiff alleges that if he were taken back into custody, there would be nobody to care for his son.  Sinodis Decl., ¶ 9.  Petitioner-Plaintiff works in construction from 7:30 a.m. to 4:30 p.m. six days a week to provide for his family.  ECF 26-1, Declaration of Aroldo Rodriguez Diaz ("Rodriguez Diaz Decl."), ¶ 14.  Petitioner-Plaintiff has not been arrested since 2018.  *Id.* ¶ 15; *see generally* Li Decl.  His supervision was de-escalated from electronic ankle monitoring to phone surveillance in April 2022.  Sinodis Decl., ¶ 6.

Respondents allege six times that Petitioner-Plaintiff failed to comply with the terms of his release throughout the five years he has been released bond: when he failed to report to Enforcement and Removal Operations ("ERO") on August 2, 2021 and March 21, 2024; when he failed to charge his GPS tracker device on October 4, 2021; when he failed to check-in through the ISAP phone application on September 5, 2023; and when he missed two home visits on November 19, 2024 and May 7, 2025.  Li Decl., ¶¶ 27–31, 35–36.  Petitioner-Plaintiff disputes whether he was scheduled to report to ERO on the two dates he missed check-ins.  Rodriguez Diaz Decl., ¶¶ 4–6.  He alleges that he reported to ERO on other dates listed in his release paperwork, and no ICE

5

officer conducting those check-ins mentioned his noncompliance.  *Id.*  Petitioner-Plaintiff acknowledges that he once failed to charge his ankle monitor battery, but he alleges that he never failed to check-in on the ISAP application.  *Id.* ¶ 8.  Petitioner-Plaintiff alleges that both times he missed a home visit, he immediately reported to the ICE office.  *Id.* ¶¶ 9–10.  Beyond these violations, Respondents do not allege any other failures to comply with Petitioner-Plaintiff's conditions of release.  Li Decl.; ECF 15 at 5.

On May 31, 2024, Petitioner-Plaintiff attended his last check-in with ICE and scheduled his next check-in for June 30, 2025.  ECF 1 ¶ 47; Sinodis Decl., ¶ 10.  On June 13, 2025, Petitioner-Plaintiff received a message instructing him to report to the San Francisco ISAP Office between 8:00 p.m. and 4:00 p.m. on June 14, 2025, or June 15, 2025.  Sinodis Decl., ¶ 11.  Petitioner-Plaintiff's counsel called ISAP three times and emailed ICE San Francisco to inquire about the purpose of the visit and to confirm that Respondents had no intention of re-detaining Petitioner-Plaintiff.  *Id.* ¶ 12.  Petitioner-Plaintiff's counsel was not able to reach ISAP by telephone and had not received an email response as of June 14, 2025.  *Id.* ¶ 12.

Currently, Petitioner-Plaintiff is still released on bond, and is under ISAP phone surveillance.  Rodriguez Diaz Decl., ¶ 1–9.

### C.  Procedural History

On June 14, 2025, Petitioner-Plaintiff filed a petition for writ of habeas corpus and a motion for a TRO.  ECF 1, 2.  Petitioner-Plaintiff seeks an order enjoining Respondents from re-arresting him unless and until he is afforded notice and a hearing before a neutral decisionmaker on the question of whether his bond should be revoked and, if so, whether he must be re-incarcerated because ICE establishes by clear and convincing evidence that he is a danger to the community or a flight risk.  ECF 2 at 1.

On June 14, 2025, the Court granted an *ex parte* TRO enjoining Respondents from re-detaining Petitioner-Plaintiff without notice and a hearing.  ECF 4 at 6.  The Court also ordered the parties to show cause why a preliminary injunction should not issue and set a hearing for June 23, 2025.  *Id.*  The parties stipulated to continue the preliminary injunction hearing to July 29, 2025, and leave to the TRO in effect while briefing Petitioner-Plaintiff's motion for a preliminary

United States District Court
Northern District of California

1    injunction.  ECF 12, 13.  The parties later stipulated to continue the hearing again and leave the

2    TRO in effect while the motion for a preliminary injunction is pending; the Court continued the

3    hearing to September 9, 2025 and granted the stipulation.  ECF 18, 21.  On June 30, 2025,

4    Respondents filed an opposition to Plaintiff's motion for a preliminary injunction.  ECF 15.  On

5    July 18, 2025, Petitioner-Plaintiff filed a reply.  ECF 26.  The Court heard oral argument on

6    September 9, 2025.

7    **II.    LEGAL STANDARDS GOVERNING PRELIMINARY INJUNCTION AND**

8    **DUE PROCESS**

9        **A.  Preliminary Injunction**

10       The legal standard for issuing a preliminary injunction is "substantially identical" to the

11   standard for a TRO.  *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017); *Stuhlbarg*

12   *Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

13       A party seeking a preliminary injunction must meet one of two variants of the same

14   standard.  The traditional *Winter* standard requires the movant to show that (1) it "is likely to

15   succeed on the merits;" (2) it "is likely to suffer irreparable harm in the absence of preliminary

16   relief;" (3) "the balance of equities tips in [its] favor;" and (4) "an injunction is in the public

17   interest."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Under the "sliding

18   scale" variant of the same standard, "if a plaintiff can only show that there are 'serious questions

19   going to the merits'—a lesser showing than likelihood of success on the merits—then

20   a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's

21   favor,' and the other two *Winter* factors are satisfied."  *All. for the Wild Rockies v. Peña*, 865 F.3d

22   1211, 1217 (9th Cir. 2017) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace,*

23   *Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).  "[W]hen the Government is the opposing party," the

24   third and fourth *Winter* factors "merge."  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

25       **B.  Due Process Clause**

26       The Due Process Clause of the Fifth Amendment to the United States Constitution states

27   that "[n]o person shall… be deprived of life, liberty, or property, without due process of law."

28   U.S. Const. amend. V.  Once a protected liberty interest is identified, the Court determines what

United States District Court
Northern District of California

United States District Court
Northern District of California

1   process is required by weighing the three *Mathews v. Eldridge* factors.  424 U.S. 319, 335 (1976).

2   "First, the private interest that will be affected by the official action; second, the risk of an

3   erroneous deprivation of such interest through the procedures used, and the probable value, if any,

4   of additional or substitute procedural safeguards; and finally, the Government's interest, including

5   the function involved and the fiscal and administrative burdens that the additional or substitute

6   procedural requirement would entail."  *Id.*

7   ### III.    DISCUSSION OF IMMIGRATION STATUTES AND PROCESS

8   #### A.  "Unaccompanied Alien Child" Status

9       An Unaccompanied Alien Child ("UAC") is a child who has no lawful immigration status

10  in the United States, is under eighteen years old, and who either has no parent or legal guardian in

11  the United States or no parent or legal guardian in the United States who is able to provide care or

12  physical custody.  6 U.S.C. § 279(g).  When a UAC is apprehended at a port of entry by U.S.

13  Border Patrol or Customs and Border Protection or apprehended in the interior of the country by

14  ICE, the UAC is put into removal proceedings and referred to ORR.  6 U.S.C. § 279.

15  #### B.  "Section 240" Removal Proceedings

16      In general, a noncitizen may be found to be "inadmissible" if they have never been legally

17  admitted to the United States, whereas a noncitizen may be found "deportable" if they were

18  previously admitted but then committed a deportable offense.  *See Barton v. Barr*, 590 U.S. 222,

19  234 (2020).  The "umbrella statutory term for being inadmissible or deportable is 'removable.'"

20  *Id.* at 226.

21      Under the standard process for removing inadmissible noncitizens, referred to as "Section

22  240" or "Section 1229(a)," removal proceedings begin when DHS files a Notice to Appear in

23  immigration court, which includes the charges of removability against the noncitizen.  8 C.F.R. §§

24  1003.13, 1003.14(a), 1003.18.  Immigration courts have jurisdiction over removal proceedings.

25  *Karingithi v. Whitaker*, 913 F.3d 1158, 111158–60 (9th Cir. 2019).  An IJ will then issue a

26  decision on the merits including a grant or denial of any application for relief from removal and a

27  finding of removability.  *See* 8 U.S.C. § 1229(a)(c).  The IJ's decision constitutes a final removal

28  order unless a party appeals.  *Id.* at (a)(c)(1)(A), (c)(5).

1    Both the noncitizen and DHS may appeal the IJ's decision to the BIA.  8 C.F.R. §§

2    1240.15, 1003.1(b).  If the BIA affirms the order of removal, the noncitizen may seek judicial

3    review of that decision by filing a PFR in the United States Court of Appeals in the judicial circuit

4    in which the immigration court proceedings occurred.  8 U.S.C. § 1252.

5    After a final removal order, noncitizens may also file a motion to reopen proceedings

6    before the BIA if there is new and relevant evidence.  8 U.S.C. § 1229(a)(c)(7); *Singh v. Garland*,

7    124 F.4th 690, 697 (9th Cir. 2024).

8    **C.  Inadmissibility Under 8 U.S.C. § 1182(a)(6)(A)(i)**

9    8 U.S.C. § 1182(a) enumerates several grounds for inadmissibility that render a noncitizen

10    "ineligible to receive visas and ineligible to be admitted to the United States."

11    Section 1182(a)(6)(A) describes "[noncitizens] present without admission or parole."

12    "[A] [noncitizen] present in the United States without being admitted or paroled, or who arrives in

13    the United States at any time or place other than as designated by the Attorney General, is

14    inadmissible."  8 U.S.C. § 1182(a)(6)(A)(i).

15    **D.  Asylum and Convention Against Torture**

16    In general, the application for asylum of a noncitizen arriving in the United States at a port

17    of entry is adjudicated by USCIS after filing a Form I-589, Application for Asylum and for

18    Withholding of Removal.  8 C.F.R. § 208.2(a); 8 C.F.R. § 1208.3.  However, if the noncitizen has

19    been served with a Notice to Appear and has Section 240 removal proceedings pending before an

20    immigration court, the IJ will adjudicate that noncitizen's application for asylum instead.  8 C.F.R.

21    208.2(b); 8 C.F.R. § 1240.11(c).  A further exception exists for UAC.  Depending on when the

22    application is filed and whether the noncitizen's UAC designation is still valid, USCIS may retain

23    initial jurisdiction over their asylum application even if removal proceedings are pending.  *See* 8

24    U.S.C. § 1158(b)(3)(c).

25    If USCIS has initial jurisdiction, an asylum officer may approve, deny, refer to

26    immigration court, or dismiss the application.  8 C.F.R. § 208.14(a)–(c).

27    To be eligible for asylum, a noncitizen bears the burden of demonstrating qualification as a

28    "refugee," meaning that they have a well-founded fear of persecution on account of one of five

1    protected grounds: race, religion, nationality, political opinion, or membership in a particular

2    social group.  8 U.S.C. § 1158(b)(1)(A); *Id.* at § 1101(a)(42)(A).

3         A noncitizen can raise a claim for protection under CAT during removal proceedings.  *See*

4    8 C.F.R. § 1208.16(a).  "[A]n applicant must show 'that it is more likely than not that he or she

5    would be tortured if removed to the proposed country of removal.'"  *Singh v. Bondi*, 130 F.4th

6    1142, 1156 (9th Cir. 2025) (citing 8 C.F.R. § 1208.16(c)(2)).

7         **E.  Arrest and Detention of Noncitizens in Removal Proceedings Under 8 U.S.C. §**

8         **1226**

9         Section 1226 "provides the general process for arresting and detaining [noncitizens] who

10   are present in the United States and eligible for removal."  *Rodriguez Diaz*, 53 F.4th at 1196.

11   Section 1226 "applies to [noncitizens] already present in the United States."  *Jennings v.*

12   *Rodriguez*, 583 U.S. 281, 303 (2018).

13            **i.  Discretionary Detention Under 8 U.S.C. § 1226(a)**

14        "Section 1226(a) sets out the default rule," and allows arrest and detention of a noncitizen

15   "pending a decision on whether the [noncitizen] is to be removed from the United States."

16   *Jennings*, 583 U.S. at 288; 8 U.S.C. § 1226(a).

17        "On a warrant issued by the Attorney General, [a] [noncitizen] may be arrested and

18   detained pending a decision on whether the [noncitizen] is to be removed from the United States.

19   Except as provided in subsection (c) and pending such decision, the Attorney General— (1) may

20   continue to detain the arrested [noncitizen]; and (2) may release the [noncitizen] on— (A) bond of

21   at least $1,500 . . . (B) conditional parole."  8 U.S.C. § 1226(a).

22        When a noncitizen is first apprehended under 8 U.S.C. § 1226(a), an ICE officer makes an

23   initial custody determination.  8 C.F.R. § 236.1(c)(8).  "The [noncitizen] will be released if he

24   'demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to

25   property or persons, and that the [noncitizen] is likely to appear for any future

26   proceeding.'"  *Rodriguez Diaz*, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).

27        If the initial determination results in detention, a noncitizen detained under 8 U.S.C. §

28   1226(a) may request a bond hearing before their removal order is final.  8 C.F.R. § 236(1)(d)(1).

United States District Court
Northern District of California

1    At this initial bond hearing, the burden is on the noncitizen to establish by a preponderance of the

2    evidence that he or she does not pose a danger and is not a flight risk. *Rodriguez Diaz*, 53 F.4th at

3    1197.

4        Section 1226(a)'s implementing regulations allow noncitizens detained under 8 U.S.C §

5    1226(a) to request subsequent bond determinations "in writing," which "shall be considered only

6    upon a showing that the [noncitizen's] circumstances have changed materially since the prior

7    redetermination." 8 C.F.R. § 1003.19(e).

8        Adverse bond decisions can be appealed to the BIA. *Rodriguez Diaz*, 53 F.4th at 1197; 8

9    C.F.R. § 1003.19(f).

10        **ii.  Revocation of Bond or Parole Under 8 U.S.C. § 1226(b)**

11        If a noncitizen has been released on bond, "[t]he Attorney General at any time may revoke

12    a bond or parole authorized under subsection (a), rearrest the [noncitizen] under the original

13    warrant, and detain the [noncitizen]." 8 U.S.C. § 1226(b). In the past, DHS has asserted that this

14    authority to re-arrest a noncitizen released on bond is limited. *See Saravia v. Sessions*, 280 F.

15    Supp. 3d 1168, 1197 (N.D. Cal. 2017) ("DHS generally only re-arrests [a] [noncitizen] pursuant to

16    § 1226(b) after a material change in circumstances."), *aff'd sub nom. Saravia for A.H. v. Sessions*,

17    905 F.3d 1137 (9th Cir. 2018).

18        **iii.  Mandatory Detention Under 8 U.S.C. § 1226(c)**

19        Section 1226(c) "carves out a statutory category of [noncitizens] who may *not* be released

20    under § 1226(a)." *Jennings*, 583 U.S. at 289. Under § 1226(c), the Attorney General "shall take

21    into custody" a noncitizen who "falls into one of several enumerated categories involving criminal

22    offenses and terrorist activities." *Id.*; 8 U.S.C. § 1226(c). Noncitizens detained under 8 U.S.C. §

23    1226(c) are not eligible for release on bond.

24        **F.  Detention of "Applicants for Admission" Under 8 U.S.C. § 1225**

25        As opposed to Section 1226, which "applies to [noncitizens] already present in the United

26    States," *Jennings*, 583 U.S. at 303, Section 1225 applies to "applicants for admission." *Rodriguez*

27    *Diaz*, 53 F.4th at 1197 (Section 1225(b) "supplement[s] § 1226's detention scheme."). Section

28    1225 defines "applicant for admission" as "[a] [noncitizen] present in the United States who has

1    not been admitted or who arrives in the United States (whether or not at a designated port of

2    arrival and including [a] [noncitizen] who is brought to the United States after having been

3    interdicted in international or United States waters)."  8 U.S.C. § 1225(a).  Both Section

4    1225(b)(1) and Section 1225(b)(2) authorize detention for certain "applicant[s] for admission."  8

5    U.S.C. § 1225(b).

6        8 U.S.C. § 1225(b)(1) "applies to [noncitizens] initially determined to be inadmissible due

7    to fraud, misrepresentation, or lack of valid documentation."  *Jennings*, 583 U.S. at 287.

8        8 U.S.C. § 1225(b)(2) is a "catchall" provision that applies to most other "applicant[s] for

9    admission."  *Id.* at 281.  "[A] [noncitizen] who tries to enter the country illegally is treated as an

10   'applicant for admission,'" whereas "[a] [noncitizen] who is detained shortly after unlawful entry

11   cannot be said to have 'effected an entry.'"  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S.

12   103, 140 (2020).

13       Noncitizens detained under 8 U.S.C. § 1225(b)(2) are subject to mandatory detention.  8

14   U.S.C. § 1225(b)(2)(A) ("[I]f the examining immigration officer determines that [a] [noncitizen]

15   seeking admission is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall*

16   be detained for a proceeding.") (emphasis added).

17       Noncitizens under both subsections, 8 U.S.C. § 1225(b)(1) and (b)(2), are not eligible for

18   bond hearings and may be released only on temporary, discretionary parole "for urgent

19   humanitarian reasons or significant public benefit."  8 U.S.C. § 1182(d)(5)(A).  This parole "shall

20   not be regarded as an admission," and "when the purposes of such parole . . . have been served the

21   [noncitizen] shall forthwith return or be returned to the custody from which he was paroled."  *Id.*

22   **IV.    DISCUSSION OF MERITS OF PRELIMINARY INJUNCTION MOTION**

23       Petitioner-Plaintiff argues that the Court should issue a preliminary injunction because (A)

24   he is likely to succeed on the merits of his claim that the Due Process Clause entitles him to notice

25   and a hearing before he is re-detained; (B) he is likely to suffer irreparable harm without relief;

26   and (C) the balance of equities and the public interest favor granting a preliminary injunction.

27   ECF 2, 26.

28

United States District Court
Northern District of California

**A. Petitioner-Plaintiff is Likely to Succeed on the Merits of his Claim that Due Procedural Due Process Entitles Him to a Pre-Deprivation Hearing**

The parties do not dispute that Petitioner-Plaintiff has a protected liberty interest at stake. ECF 2 at 11–13; ECF 15 at 10 ("The government recognizes that any form of detention will implicate an individual's liberty interests."). The Court agrees. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause.); *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").

Once a protected liberty interest is identified, the Court determines what process is required by weighing the three *Mathews v. Eldridge* factors. 424 U.S. 319, 335 (1976). "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* Thus, the issue before the Court is whether Petitioner-Plaintiff's liberty interest is weighty enough to require pre-deprivation notice and a hearing before a neutral adjudicator.

Petitioner-Plaintiff argues that (i) he has a weighty liberty interest in conditional release; (ii) the risk of erroneous deprivation without a pre-deprivation hearing is high; and (iii) Respondents' interest in detaining him without a pre-deprivation hearing is minimal. ECF 2, 26.

**i. Petitioner-Plaintiff has a Protected Liberty Interest in Conditional Release**

Petitioner-Plaintiff argues his liberty interest is weighty because (1) his liberty interest is at least as strong the liberty interest of individuals conditionally released on parole; and (2) during the five years he has lived freely, he has complied with the conditions of his release and been a

1  law-abiding father and member of his community.  ECF 2 at 11–13.

2          **1.  Petitioner-Plaintiff's Liberty Interest in Conditional Release
               from Civil Detention is at Least as Strong as a Parolee's Interest
3              in Conditional Release**

4          Petitioner-Plaintiff argues that as a noncitizen released on bond from civil immigration

5  detention, he shares at least the same "valuable" interest parolees have in their "continued liberty."

6  ECF 2 at 14.  *Morrissey v. Brewer*, 408 U.S. 471, 481–82 (1972).  Respondents argue that that

7  noncitizens are not entitled to the same rights as citizens, and Petitioner-Plaintiff's liberty interest

8  is reduced by the fact that he was released pursuant to an erroneous process.  ECF 15 at 9–10.

9          First, it is well-established that parolees have a strong interest in their conditional release,

10  *Morrissey*, 408 U.S. at 481–82, and courts have held they cannot be re-arrested without a due

11  process hearing in which they can challenge their re-incarceration.  *Id.*; *United States v. Santana*,

12  526 F.3d 1257, 1259 (9th Cir. 2008); *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir.

13  2010); *Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017).  The Court does not

14  distinguish between citizens and noncitizens in this context.  *See Ortega v. Bonnar*, 415 F. Supp.

15  3d 963, 969 (N.D. Cal 2019) ("Just as people on preparole, parole, and probation status have a

16  liberty interest, so too does Ortega have a liberty interest in remaining out of custody on bond.").

17  Noncitizens have a right to due process.  *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1056

18  (N.D. Cal 2021) ("The Court… declines to ignore the due process principles articulated in

19  *Morrissey* on the basis that it was not decided in the immigration context.").

20          Here, Petitioner-Plaintiff is a noncitizen who was released on bond by an immigration

21  court.  Sinodis Decl., Ex. A.  Because Petitioner-Plaintiff's release was in the civil—not

22  criminal—context, Petitioner-Plaintiff's liberty may not be diminished as a punishment.  *See*

23  *Zadvydas*, 533 U.S. at 690 (holding civil detention is nonpunitive); *see also U.S. v. Knights*, 534

24  U.S. 112, 119 (2001) (comparing probationers' reduced liberty with that of "law-abiding

25  citizens").  Petitioner-Plaintiff's liberty interest on bond is therefore at least as great as those

26  serving criminal sentences on parole.  Indeed, "[e]ven parolees—for whom detention is the

27  'default,' who are subject to significant constraints on liberty, and who continuing to serve their

28  criminal sentences for serious or violent felonies while released on parole—may not be detained

United States District Court
Northern District of California

and put back in prison without a court hearing within a few days." *Guillermo M. R. v. Kaiser*, No. 25-cv-05436, 2025 WL 1983677, at *1 (N.D. Cal. July 17, 2025).

Second, the strength of Petitioner-Plaintiff's liberty interest depends on the fact of his release and is not diminished by the Ninth Circuit's ruling overturning his grant of habeas. *See Johnson v. Williford*, 682 F.2d 868, 873 (9th Cir. 1982) (holding "due process considerations" support a ruling that revoking parole after it was granted erroneously would be "inconsistent with fundamental principles of liberty and justice); *Ortega*, 415 F. Supp. 3d at 976 (holding that although noncitizen's bond order was later vacated after his release, due process still entitled him to notice and a hearing before re-detention). At oral argument, Respondents raised *Uc Encarnacion v. Kaiser*, No. 22-cv-04369, 2022 WL 9496434 (N.D. Cal. Oct. 14, 2022) as evidence to the contrary. That case is not persuasive here. In *Uc*, ICE appealed the merits of an IJ's bond determination, so reversal of that decision cast doubt on the petitioner's eligibility for release. 2022 WL 9496434, at *2. Here, the Ninth Circuit overturned the habeas grant that required a second bond hearing, a constitutional and procedural question that did not involve review of the IJ's factual determination. *Rodriguez Diaz*, 53 F.4th at 1195. In this case, ICE also let Petitioner-Plaintiff retain his liberty for three years following the Ninth Circuit's decision, whereas in *Uc*, ICE moved to re-arrest him within weeks of the BIA's decision. 2022 WL 9496434, at *2.

Accordingly, the Court finds that Plaintiff has a protected liberty interest in his conditional release, at least as strong as a parolee's under *Morrissey* and one that is not diminished by fact that the procedures leading to his release were overturned. *Ortega*, 415 F. Supp. 3d at 976.

## 2. Petitioner-Plaintiff's Liberty Interest Has Grown Since 2020

Petitioner-Plaintiff argues that his liberty interest has only grown over the five years he has been living freely and complying with the conditions of his release. ECF 2 at 12–13. Respondents dispute whether Petitioner-Plaintiff has complied with the conditions of his release. Li Decl., ¶¶ 27–31, 35–36.

In the past five years, Petitioner-Plaintiff has been the sole caretaker of his U.S. citizen son, who would be severely harmed if he is re-detained. He also now supports his infant U.S.

15

1    citizen daughter.  ECF 1 ¶ 3; Sinodis Decl., ¶ 9.  Petitioner-Plaintiff has been working in

2    construction full time and has not been arrested since 2018.  Rodriguez Diaz Decl., ¶¶ 14– 15; *see*

3    Li Decl.  Petitioner-Plaintiff has developed "extensive relations of support and interdependence"

4    throughout this time that "underscore the high stakes of [his] liberty."  *Pinchi v. Noem*, No. 25-cv-

5    05632, 2025 WL 2084921, at *3 (N.D. Cal. July 25, 2025).

6            To the extent that Respondents argue that Petitioner-Plaintiff's liberty is diminished by

7    alleged violations of his conditions of release, these factual disputes must be adjudicated at a pre-

8    deprivation hearing.  *See Morrissey*, 408 U.S. at 499 ("The parolee must have an opportunity to be

9    heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances

10   in mitigation suggest that the violation does not warrant revocation.").  Respondents document

11   only six times over the course of five years that Petitioner-Plaintiff has violated the conditions of

12   his release, and the record is not clear as to half of these allegations.  Rodriguez Diaz Decl., ¶¶ 4–6

13   (disputing whether Petitioner-Plaintiff was ever scheduled to check-in on two of the dates

14   missed,); *Id.* ¶ 8 (disputing accuracy of ISAP check-in records).  The remaining violations are two

15   missed home visits, after which Petitioner-Plaintiff immediately reported to ICE, *id.* ¶¶ 9–10, and

16   one dead battery on an ankle monitor, *id.* ¶ 7.  These factual disputes must be adjudicated at a pre-

17   deprivation hearing and they do not extinguish the liberty interest that grew when Respondents

18   "permitted [Petitioner-Plaintiff] to develop an out-of-custody life in the United States" over the

19   past five years.  *Pinchi*, 2025 WL 2084921, at *4 n.5.

20           Hence, the Court finds that Petitioner-Plaintiff's protected liberty interest has only grown

21   as he has exercised his right to live and work for five years under the terms of his bond.  *See id.* at

22   *4 (finding noncitizen's liberty interest "significant" and "heightened" given "[t]he more than two

23   years that she has spent out of custody since ICE initially released her" and her justifiable reliance

24   on "the government's implied promise in obtaining employment, taking on financial responsibility

25   for her family members, and developing community relationships").

26                                    *      *      *

27           Accordingly, the Court finds that Petitioner-Plaintiff has at least as strong of an interest in

28   his conditional release that a parolee in the criminal context does, and that liberty interest has

grown over the last five years.

### ii. The Risk of Erroneous Deprivation Without Pre-Deprivation Process is High

Petitioner-Plaintiff argues that the risk of erroneous deprivation without a pre-deprivation hearing is high because a post-deprivation hearing under 8 U.S.C. § 1226(a) does not allow him to challenge Respondents' re-detention decision, and a recent change in legal interpretation by DHS could leave him with no post-deprivation procedures whatsoever. ECF 2 at 18–19. Respondents argue that the "existing procedures to challenge detention under [8 U.S.C.] § 1226(a)" are constitutionally sufficient. ECF 15 at 11. Respondents also assert in briefing and in oral argument that no justification is required to re-detain Petitioner-Plaintiff beyond the fact that the Ninth Circuit overturned the habeas petition leading to his release. ECF 15 at 7 n.4.

The Court finds that the risk of erroneous deprivation is high because Respondents have already abandoned their commitment to justifying re-detention, *id.*, and may be abandoning their commitment to post-deprivation process as well, Sinodis Decl., Ex. I. The combination leaves Petitioner-Plaintiff with no pathway to challenge his re-detention or his custody, if detained.

First, Respondents' assertion that no justification for re-detention is needed is inconsistent with DHS practice, which has historically required a showing of changed circumstances when re-detention follows release by a DHS officer or IJ bond determination. *See Saravia*, 280 F. Supp. 3d at 1197, *aff'd sub nom. Saravia*, 905 F.3d 1137; *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) ("Thus, absent changed circumstances … ICE cannot redetain Panosyan."). Respondents' new position would grant ICE unlimited authority to disregard any bond determination made by an IJ for any reason, which is "a recipe for arbitrary and erroneous deprivations of liberty." *Guillermo M.R.*, 2025 WL 1983677, at *8. At the very least, Respondents must justify why civil detention is warranted to prevent flight or protect against danger to the community. *Pinchi*, 2025 WL 2084921, at *5; *see Zadvydas*, 533 U.S. at 679. Further, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981. If Respondents wish to establish that re-detention is warranted by raising the effect of *Rodriguez Diaz* or Petitioner-Plaintiff's six

1    alleged bond violations, a hearing before a neutral adjudicator provides a forum to do so.  *See*

2    *Ortega*, 415 F. Supp. 3d at 970 (holding pre-deprivation hearing before a neutral adjudicator is

3    required to adjudicate circumstances warranting re-detention); *Vargas v. Jennings*, No. 20-cv-

4    5785, 2020 WL 5074312, at *3–4 (N.D. Cal. Aug. 23, 2020) (same); *Jorge M.F.*, 534 F. Supp. at

5    1056 (same).

6         Second, a pre-deprivation hearing is the only process that could hold Respondents

7    accountable to their burden to legally justify re-detention.  After an arrest and revocation of bond,

8    Petitioner-Plaintiff may seek review only *of the custody determination* pursuant to 8 U.S.C. §

9    1226(a) by bearing the burden to demonstrate eligibility for release.  8 C.F.R. § 236.1(c)(9);

10   *Hernandez*, 872 F.3d at 982.  Petitioner-Plaintiff cannot seek review of the revocation of his bond

11   in the first instance, *id.*, which poses a greater risk than ever now that Respondents assert

12   unlimited authority.  The Court finds that a post-deprivation hearing where the deprivation itself is

13   unreviewable is no substitute for what Petitioner-Plaintiff seeks.  *See Zadvydas*, 533 U.S. at 692

14   ("The Constitution may well preclude granting 'an administrative body the unreviewable authority

15   to make determinations implicating fundamental rights.'").

16        *Rodriguez Diaz* does not foreclose placing the burden on the government at the hearing

17   Petitioner-Plaintiff requests.  *See* 53 F.4th at 1207 ("*Mathews* remains a flexible test;" "[W]e do

18   not foreclose all as-applied challenges to § 1226(a)'s procedures.").  *Rodriguez Diaz* held that due

19   process did not entitle Petitioner-Plaintiff, whose detention had become prolonged, to a second

20   bond hearing at which the government bore the burden of proof by clear and convincing evidence.

21   *Id.* at 1203, 1211 ("We are aware of no Supreme Court case placing the burden on the government

22   to justify the continued detention of [a] [noncitizen].").  Here, the pre-deprivation hearing is not

23   for the government to justify *continuing* the status quo of detention; rather, Petitioner-Plaintiff

24   asks the government to justify a sudden *departure* from the status quo.  The Court finds that in

25   these circumstances, where Petitioner-Plaintiff holds a protected liberty interest in his conditional

26   release, the government bears the burden of justifying a departure from the IJ's prior

27   determination that led to Petitioner-Plaintiff's release.  *See Jorge M.F.*, 534 F. Supp. at 1057

28   (holding "due process requires the government to prove that a noncitizen is a danger to the

18

1    community or a flight risk" in order to justify re-detention"); *Pinchi*, 2025 WL 2084921, at *7

2    (similar).

3              Third, after Respondents' opposition brief was filed, ICE adopted a new legal

4    interpretation which could render Petitioner-Plaintiff subject to mandatory detention under

5    § 1225(b), instead of discretionary detention under § 1226(a).  Sinodis Decl., Ex. I ("Effective

6    immediately, it is the position of DHS that [noncitizens present in the United States who have not

7    been admitted] are subject to detention under INA § 235(b) and may not be released from ICE

8    custody except by INA § 212(d)(5) parole."); *see also Matter of Yajure-Hurtado*, 29 I&N Dec.

9    216, 228–29 (B.I.A 2025) (holding noncitizens who enter without being admitted or inspected are

10   "applicants for admission" and therefore subject to mandatory detention with no bond eligibility).

11             Respondents do not argue that Petitioner-Plaintiff is subject to detention under § 1225(b);

12   rather, they argue that no pre-deprivation hearing is necessary *because* Petitioner-Plaintiff can

13   avail himself of a bond hearing pursuant to § 1226(a).  ECF 15 at 10–11.  Respondents' own brief

14   concedes the protections Petitioner-Plaintiff was entitled to when his initial detention and

15   subsequent bond hearings were conducted pursuant to 8 U.S.C. § 1226(a).  ECF 15 at 5–7.

16   Respondents could not credibly argue otherwise; Petitioner-Plaintiff's entire record confirms that

17   his detention was (and re-detention would be) subject to § 1226(a) as long as he has pending

18   removal proceedings.  *See, e.g.*, *Rodriguez Diaz*, 53 F.4th at 1194 (describing custody taken

19   pursuant to 8 U.S.C. § 1226(a)); Li Decl., Ex. A (denial of first bond request after hearing

20   pursuant to 8 C.F.R. § 236.1(c)); Li Decl., Ex. C (describing bond hearing pursuant to INA §

21   236(a) (8 U.S.C. § 1226(a))).

22             If Respondents change their long-held position that Petitioner-Plaintiff is eligible for a

23   post-deprivation bond hearing, the liberty interests at stake only increase.  In that scenario,

24   Petitioner-Plaintiff could neither challenge the decision to revoke his bond prior to detention, nor

25   request a bond hearing after he is detained.  Petitioner-Plaintiff would have a likely chance of

26   success on a claim that his mandatory detention is unlawful and, depending on the length of time,

27   even unconstitutional.  *See Guzman v. Andrews*, No. 1:25-cv-01015, 2025 WL 2617256, at *3–5

28   (E.D. Cal. Sept. 9, 2025) (finding likelihood of success on the merits on claim challenging

1    unlawful detention under § 1225(b) claim, where prior arrest warrant identified § 1226(a));

2    *Mosqueda v. Noem*, No. 5:25-cv-02304, 2025 WL 2591530, at *4–6 (C.D. Cal. Sept. 8, 2025)

3    (finding likelihood of success on the merits of claim that noncitizens who have been residing in

4    the country and did not recently apply for admission are subject to § 1226(a), not § 1225(b));

5    *Zadvydas*, 533 U.S. at 679 ("A statute permitting indefinite detention would raise serious

6    constitutional questions.").  Spending months or years in unlawful detention before adjudication of

7    his claims is precisely the type of deprivation the Due Process Clause was designed to prevent.

8    *See Guillermo M.R.*, 2025 WL 1983677, at *8 ("[I]t would be cold comfort for [p]etitioner to be

9    re-released by an IJ after waiting six months in custody for the error to be corrected.").

10        Federal courts have long interpreted § 1226(a) as being the "default rule" governing

11   noncitizens with pending removal proceedings, even if they previously entered without being

12   admitted or inspected.  *Rodriguez Diaz*, 53 F.4th at 1189; *see Jennings*, 583 U.S. at 287

13   (distinguishing laws that "decide (1) who may entry the country and (2) who may stay here after

14   entering," citing first §1225 and how it applies at "borders and ports of entry," and citing second

15   §1226(a), which applies to "[noncitizens] once inside the United States" "pending their removal").

16   Many district courts have addressed this question, holding that statutory interpretation canons

17   prohibit a new interpretation that Section 1225(b) applies to "all noncitizens who have not been

18   admitted," because that would render entire sections of the INA superfluous, ignore recent

19   legislation that treats the two sections differently, and defy longstanding interpretation.  *See, e.g.*,

20   *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1255-1263 (W.D. Wash. 2025); *Maldonado v. Olson*,

21   No. 25-cv-3142, 2025 WL 2374411, at *3 (D. Minn. Aug. 15, 2025); *Julian Vasquez Gargia et al,*

22   *v. Noem*, No. 25-cv-02180, 2025 WL 2549431, at *8 (S.D. Cal. Sept. 3, 2025); *Romero v. Hyde*,

23   No. cv-25-11631, 2025 WL 2403827, at *1 (D. Mass. Aug. 19, 2025) (citing cases).  The statutory

24   interpretation question is not directly raised in this case, but it weighs heavily on the *Mathews*

25   balancing here.  If Respondents ignore decades of precedent and decide Petitioner-Plaintiff is no

26   longer eligible for a bond hearing under 8 U.S.C. § 1226(a), Respondents' reassurances about

27   adequate post-deprivation procedures ring hollow for Petitioner-Plaintiff and millions of others.

28        Accordingly, the Court finds that the risk of erroneous deprivation without pre-deprivation

*United States District Court*
*Northern District of California*

20

1    process is extraordinarily high.  *Pinchi*, 2025 WL 2084921, at *5 (finding risk of erroneous

2    deprivation especially high because "DHS's policies regarding detention pending removal and the

3    procedures it will afford noncitizens in such proceedings are in flux and uncertain," and "the

4    government's proposed post-detention procedural safeguards" are "inadequa[te] and

5    unreliabl[e]").

6              ###    iii.    Respondents' Interest in Detaining Petitioner-Plaintiff Without a
                              Hearing is Minimal

7              Respondents argue that the government has an interest in "protecting the public from

8    dangerous criminal [noncitizens]," *see* ECF 15 at 12 (quoting *Rodriguez Diaz*, 53 F.4th at 1208),

9    and unilateral detention is justified to "protect[] public health and safety."  ECF 15 at 13.  At oral

10   argument, Respondents concede they have no recent evidence that Petitioner-Plaintiff is dangerous

11   beyond the criminal record that predates his last bond hearing.  *See* Li Decl.  Instead, Respondents

12   emphasized that their interest in re-detaining Petitioner-Plaintiff arose when the Ninth Circuit held

13   that the procedures leading to his release in May 2020 were erroneous.  *See Rodriguez Diaz*, 53

14   F.4th at 1214.  Petitioner-Plaintiff argues that Respondents' repeated decisions not to arrest him

15   until now demonstrate that Respondents do not view him as a flight risk or danger.  ECF 26 at 12.

16   Petitioner-Plaintiff also argues that the burden on the government of providing him a pre-

17   deprivation hearing is minimal.  ECF 2 at 15–17.

18             If the Ninth Circuit decision gave rise to a legitimate fear for "public health and safety,"

19   Respondents would have moved to re-detain Petitioner-Plaintiff before now.  ICE never moved to

20   re-arrest Petitioner-Plaintiff after the *Rodriguez Diaz* decision overturning Judge Gonzalez

21   Rogers's grant of habeas.  ECF 1 ¶ 41.  Additionally, each subsequent time Petitioner-Plaintiff

22   reported to ICE for a check-in, an ICE officer "at least implicitly, made a finding that petition was

23   not a flight risk."  *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *2 (E.D. Cal. July

24   11, 2025).  Respondents have no argument as to why Petitioner-Plaintiff is currently a threat to the

25   public, and without that, unilateral detention is not justified. *See Aviles Mena v. Kaiser*, No. 25-cv-

26   06783, 2025 WL 2322788, at *3 (N.D. Cal. Aug. 12, 2025) ("[T]he Court concludes that the

27   government's interest in re-detaining Petitioner-Plaintiff without a hearing is 'low,' particularly in

light of the fact that Petitioner-Plaintiff has maintained lawful presence."); *Ortega*, 415 F. Supp. 3d at 970 (same).

Moreover, the added "resource burdens" feared by Respondents, ECF 15 at 12, do not outweigh the potential cost of erroneously depriving Petitioner-Plaintiff of liberty. *Pinchi*, 2025 WL 2084921, at *7 ("[I]t is likely that the cost to the government of detaining [petitioner] pending any bond hearing would significantly exceed the cost of providing her with a pre-deprivation hearing."). Petitioner-Plaintiff is not asking the Court to enjoin detention altogether, he only requests that Respondents justify his re-detention at a pre-deprivation hearing. ECF 26 at 12. If a neutral arbitrator finds that re-detention is not legally justified, a pre-deprivation hearing will save Respondents from spending resources on erroneous detention. *Vargas*, 2020 WL 5074312, at *4 (finding "public's interest in the efficient allocation of the government's fiscal resources" and "staggering" costs of detention favor granting injunctive relief); *Meza v. Bonnar*, No. 28-cv-02708, 2018 WL 2554572, at *4 (N.D. Cal. June 4, 2018) (same).

Accordingly, the Court finds that the promise of post-deprivation procedures is insufficient to protect against the erroneous deprivation of Petitioner-Plaintiff's liberty interest and Respondents' interest does not outweigh this risk. Each of the *Mathews* factors favors Petitioner-Plaintiff, and the Court finds that he is likely to succeed on the merits of his claim that the Due Process Clause entitles him to notice and a pre-deprivation hearing before a neutral arbitrator where Respondents bear the burden of justifying his re-detention before he is detained. *Ortega*; 415 F. Supp. 3d at 970.

### B.  Petitioner-Plaintiff is Likely to Suffer Irreparable Harm Absent Relief

Petitioner-Plaintiff argues that without relief from this Court, he is likely to be subjected to unlawful re-detention and the violation of his due process rights. ECF 2 at 19–20. Respondents argue that the injury of detention is not "irreparable" when a post-deprivation hearing is available, and Petitioner-Plaintiff fails to show that the injury is "likely." ECF 15 at 13–14.

"[T]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347,

1  373 (1976)).  The Ninth Circuit has also recognized the "irreparable harms imposed on anyone

2  subject to immigration detention," and especially "the economic burdens imposed on detainees

3  and their families as a result of detention, and the collateral harms to children of detainees whose

4  parents are detained."  *Hernandez*, 872 F.3d at 995.  Petitioner-Plaintiff is the sole caretaker for his

5  U.S. citizen son and also has an infant U.S. citizen daughter who relies on him for care and

6  economic support.  ECF 1 ¶¶ 2–3.

7          Respondents cannot credibly promise that a post-deprivation hearing will repair the harm

8  of detention without due process when the government is changing its longstanding position on

9  bond eligibility.  *See* Sinodis Decl., Ex. I.  Additionally, by the time any post-deprivation hearing

10  is available, it will already be too late.  *Jorge M.F.*, 534 F. Supp. 3d at 1055 ("[I]f Petitioner is

11  detained, he will already have suffered the injury he is now seeking to avoid.").

12          The Court also finds that the harm is likely, given Respondents' disavowal of the

13  requirement to legally justify re-detention,  ECF 15 at 6, 9 (citing 8 U.S.C. § 1226(b)),  failure to

14  respond to Petitioner-Plaintiff when he sought reassurances that his check-in would not lead to re-

15  arrest, *see* Sinodis Decl., ¶ 12, and failure to dispute allegations that other noncitizens have been

16  met with arrest in similar circumstances, *id.*, Ex. G.[1]  Given many opportunities in briefing and

17  oral argument to clarify they have no plans to re-detain Petitioner-Plaintiff, Respondents took

18  none.

19          Accordingly, the Court finds that Petitioner-Plaintiff alleges more than a "tenuous"

20  irreparable injury.  *See* ECF 15 at 14.  In the absence of preliminary relief, Petitioner-Plaintiff is

21  likely to suffer immediate and irreparable harm in the form of re-arrest and detention without due

22  process.  *Garcia v. Bondi*, No. 25-cv-05070, 2025 WL 1676855, at *3 (N.D. Cal. June 14, 2025)

23  (finding irreparable injury where petitioner's children "depend upon him for support" and ISAP

24  "did not respond to…inquiries regarding the purpose of the check-in").

25  _____

26  [1] Other requests for injunctive relief in this district have involved noncitizens who were, in fact, arrested after reporting to immigration check-ins.  *See, e.g.*, *Pablo Sequen v. Kaiser*, No. 25-cv-

27  06487, 2025 WL 2203419, at *1 (N.D. Cal. Aug. 1, 2025) (arrested by ICE after appearing for a hearing in immigration court); *Domingo v. Kaiser*, No. 25-CV-05893, 2025 WL 1940179, at *1

28  (N.D. Cal. July 14, 2025) (detained by ICE after appearing for a scheduled interview).

United States District Court
Northern District of California

**C.  The Balance of Equities and the Public Interest Weigh in Favor of Granting Relief**

Petitioner-Plaintiff argues that the balance of equities strongly favors him because he faces irreparable injury, Respondents face no harm from being asked to comply with the Constitution, and the public benefits from restraining the government's ability to violate individuals' constitutional rights.  ECF 2 at 21.  Respondents argue again that the public has an interest in detaining noncitizens whom "the government has found to be a danger to the community."  ECF 15 at 15 (citing *Martinez v. Clark*, 124 F.4th 775, 786 (9th Cir. 2024)).

Since the government is a party, the final two *Winter* factors merge.  *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Respondents "cannot reasonably assert that [they] [are] harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  As a result, the only consequence of a preliminary injunction for Respondents is a delay in detaining Petitioner-Plaintiff, if they can ultimately demonstrate to a neutral adjudicator that his re-detention is justified.  The public interest in detaining dangerous individuals, *see* ECF 15 at 15, will not be disrupted if Respondents prevail at the hearing.  Conversely, Petitioner-Plaintiff has demonstrated the substantial harm he will face if detained without due process, and "all citizens have a stake in upholding the constitution."  *Pinchi*, 2025 WL 2084921, at *7 (quoting *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005)).

Accordingly, the balance of equities and the public interest weigh heavily in favor of granting a preliminary injunction.  *Garcia*, 2025 WL 1676855, at *3 (balance of equities "tip[s] sharply" petitioner's favor, where "[w]ithout the requested injunctive relief, [petitioner] might be abruptly taken into ICE custody, subjecting both him and his family to significant hardship," and "comparative harm potentially imposed on [respondents] is minimal"); *Jorge M.F.*, 534 F. Supp. 3d at 1056 (holding public interest "sharply favor[s] granting injunctive relief" where there is a "low risk that Petitioner[] would cause harm to others or flee[] in light of his strong family ties, financial responsibilities, and work commitments") (quoting *Vargas*, 2020 WL 5074312, at *4).

For the foregoing reasons, the Court concludes that Petitioner-Plaintiff is likely to succeed on the merits of his claim that procedural due process entitles him to notice and a hearing before a

24

neutral adjudicator where the government bears the burden of showing that Petitioner-Plaintiff's re-detention is legally justified.  Petitioner-Plaintiff is likely to suffer irreparable harm absent relief, and the balance of equities and public interest strongly favor issuing a preliminary injunction.

## V.     CONCLUSION

The Court **GRANTS** Petitioner-Plaintiff's motion for a preliminary injunction for the pendency of these proceedings because Petitioner-Plaintiff has shown a likelihood of success on the merits of his claim that procedural due process entitles him to a pre-deprivation hearing, he is likely to suffer irreparable harm without relief, and the balance of equities and public interest weigh strongly in favor of granting a preliminary injunction.  Respondents are **ENJOINED** from re-detaining Petitioner-Plaintiff Aroldo Rodriguez Diaz without notice and a pre-deprivation hearing before a neutral decisionmaker where Respondents demonstrate that Petitioner-Plaintiff's re-detention is legally justified.

IT IS SO ORDERED.

Dated: September 15, 2025

_____
TRINA L. THOMPSON
United States District Judge